**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

RICHARD SELVIS JEFFERSON,

                    Petitioner,

v.                                    CIVIL ACTION NO.  5:07-cv-00941

DAVID BERKEBILE,

                    Respondent.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Petitioner's Amended Petition for Writ of Habeas Corpus: 28 U.S.C. § 2241 [Docket 51].

*I.  FACTUAL AND PROCEDURAL BACKGROUND*

In May of 1991, Petitioner embarked on a several day crime spree that involved the commission of multiple serious offenses. Petitioner stole a car at gunpoint in Baltimore, Maryland, for use as a getaway car for a later robbery. He then proceeded to Jersey City, New Jersey, where he committed the armed robberies of two liquor stores on consecutive days. In one of the robberies, the proprietor of the liquor store suffered serious gunshot wounds. This was followed by the armed robbery of a bank in Jersey City. Petitioner fled the scene of the bank robbery in the stolen car with Jersey City police officers in hot pursuit. This led to a crash and a shootout with the officers. Petitioner was apprehended by the officers and placed in state custody on May 31, 1991. The New Jersey authorities charged Petitioner with numerous offenses, including multiple counts of armed

robbery, aggravated assault, unlawful possession of a weapon, and attempted murder of a police officer.

While in state custody awaiting trial on the state offenses, federal bank robbery and weapon possession charges were filed against Petitioner. He was "borrowed" by federal authorities pursuant to a writ of habeas corpus ad prosequendum for the purpose of prosecuting the federal charges against him. Petitioner appeared before the Honorable H. Lee Sarokin, United States District Judge for the District of New Jersey, and pled guilty to two counts of the indictment: bank robbery in violation of 18 U.S.C. § 2113 and possession of a firearm in the commission of a bank robbery in violation of 18 U.S.C. § 924(c).

Petitioner was sentenced on the federal charges on September 2, 1992. The firearm possession charge carried a mandatory five-year term of imprisonment to run consecutively to the bank robbery sentence. The total offense level for Petitioner's bank robbery charge was 28 and his criminal history category was III. This produced a guideline sentence range of 97 to 121 months incarceration under the then-mandatory United States Sentencing Guidelines. The pending state charges did not factor into the computation of Petitioner's total offense level or criminal history category. At sentencing, Judge Sarokin expressed concern that Petitioner's sentence would not account for all of his criminal activity during the crime spree. It had come to the court's attention that the state charges pending against Petitioner likely would result in a plea agreement, and that one of the terms of the proposed plea agreement recommended that Petitioner's state sentence run concurrently with his federal sentence. Regarding the state plea agreement, Judge Sarokin remarked,

> In essence, this provides no additional sanction under the state system for the two armed robberies in Jersey City, as well as the attempted murder of the police officers. Therefore, the full responsibility for this sanction and punishment appears to rest with this Court.

(Docket 2-2.)  Accordingly, Judge Sarokin outlined two separate grounds for an upward departure of Petitioner's guideline sentencing range to account for the state offenses.  First, Judge Sarokin stated that it would be appropriate to increase Petitioner's criminal history category from III to V. This would produce a guideline sentence range of 130 to 162 months on the bank robbery count. In the alternative, Judge Sarokin considered including the state offenses as relevant conduct and increasing the total offense level to 34.  This would produce a guideline sentence range of 188 to 235 months.  Judge Sarokin settled on the former grounds for departure and found a total offense level of 28 and a criminal history category of V.  Petitioner was sentenced to 210 months incarceration, which consisted of 150 months for the bank robbery count and 60 months for the firearm possession count.  Immediately following pronouncement of the sentence, Judge Sarokin stated,

> Mr. Jefferson, the Court has imposed a substantial sentence upon you in this matter, but one thing is you will be moved, I would expect in the near future, out of the local jail.  You will be put in a federal prison.

(Docket 2-2.)

Petitioner was returned to the New Jersey authorities for the disposition of the state charges pending in the Hudson County Superior Court.  As anticipated, Petitioner pled guilty to three counts—two counts of armed robbery and one count of attempted murder—in accordance with a plea agreement.  The plea agreement contained the following sentencing recommendation from the Hudson County Prosecutor: "20 years with 10 [years] parole ineligibility to run concurrent with each

3

indictment and with federal time (210 months)." (Docket 2-1.)  The recommendation was followed

by the court[1] and Petitioner was sentenced to ten- to twenty-years incarceration on each count on

April 28, 1993.  The sentencing judge ordered each sentence to run concurrently with the others and

with the federal sentence.

Petitioner was not returned to federal custody, however, as Judge Sarokin apparently had

expected.  He was placed in the New Jersey prison system to serve his sentence.  Petitioner was

paroled on March 4, 2003, after serving roughly twelve years in state custody.  He was taken into

federal custody immediately upon his release from state custody.  Pursuant to 18 U.S.C. § 3585(a),[2]

he was not given credit for the time served in state custody, and the service of his 210-month federal

sentence commenced at that time.  The projected date of Petitioner's release, accounting for good

conduct credit, is August 24, 2018.

Petitioner filed a request with the Bureau of Prisons (BOP) for a nunc pro tunc designation

of the state prison where he served his sentence as a federal facility.  If granted, the request would

---

[1]  The Hudson County Superior Court's judgement order stated:

> DEFT IS TO BE DELIVERED TO THE COMMISSIONER OF THE DEPT OF
> CORRECTIONS FOR A TERM OF TWENTY (20) years with a 10 year parole
> ineligibility period.  SENTENCE TO RUN CONCURRENT WITH SENTENCES
> ON Indt. 507-03-92, 1702-08-91 and Federal Sentence.

(Docket 2-1 (emphasis in original).)

[2]  This section provides:

> A sentence to a term of imprisonment commences on the date the defendant is
> received in custody awaiting transportation to, or arrives voluntarily to commence
> service of sentence at, the official detention facility at which the sentence is to be
> served.

18 U.S.C. § 3585(a).

have afforded Petitioner credit against his federal sentence for the approximately twelve years served in state custody. On June 12, 2003, the BOP addressed a letter to Judge Sarokin asking if he objected to the nunc pro tunc designation of Petitioner's sentence. Judge Sarokin had since retired from the bench and the Probation Office responded in his stead. The return letter stated that the Probation Office believed that the sentencing court intended the federal sentence to run consecutively to the state sentence. (Docket 11-1.) Based on this letter and other factors, the BOP denied Petitioner's nunc pro tunc request on October 23, 2003.

After exhausting his administrative appeals, Petitioner filed this action on December 12, 2007. By Standing Order entered August 1, 2006, and filed in this action on December 17, 2007, the petition was referred to the Honorable Mary E. Stanley, United States Magistrate Judge, for submission to this Court of proposed findings and recommendations (PF&R) in accordance with 28 U.S.C. § 636(b)(1)(B). On May 5, 2008, the magistrate judge submitted a PF&R recommending that the Court deny the petition and dismiss the action from the Court's docket. In his response to the PF&R, Petitioner raised no objections to the magistrate judge's proposed findings and conceded that he has no remedy under the relevant statutes.[3] Nevertheless, the Court exercised its discretion to afford the PF&R de novo review, *see United States v. Raddatz*, 447 U.S. 667, 680 (1980); *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983), and found some of the proposed findings to be inconsistent with the record.

---

[3] Although Petitioner did not challenge the PF&R, he filed a second action (Civil Action No. 5:08-00863) shortly thereafter in which he relied on principles normally associated with contract law to argue that this Court has equitable authority to correct the government's mistakes and release him from custody. The second action was consolidated with the instant action.

In a Memorandum Opinion and Order entered January 20, 2009, the Court found that the manner in which the BOP considered and denied Petitioner's nunc pro tunc designation request did not comport with the applicable statutes in two respects and therefore was an abuse of discretion. First, the BOP did not give appropriate consideration to the requisite statutory factors when it construed a letter from the Probation Office as a "statement by the court that imposed the sentence." 18 U.S.C. § 3621(b) (setting forth five factors the BOP must consider when making designation decisions). Second, the BOP misconstrued 18 U.S.C. § 3584(a) when it determined that there was a statutory presumption that Petitioner's federal sentence was to be consecutive to his state sentence, which had not yet been imposed. *Cf. United States v. Smith*, 472 F.3d 222, 226 (4th Cir. 2006). Based on these findings, the Court remanded the matter to the BOP with instructions to promptly reconsider Petitioner's request for nunc pro tunc designation.

The BOP again denied Petitioner's request for a nunc pro tunc designation on February 6, 2009. The BOP's decision relied heavily on the nature and circumstances of the offense and Petitioner's history and characteristics.

In an Order dated February 19, 2009, the Court took stock of the procedural history of this case in light of Petitioner's extraordinary factual allegations. Petitioner, who had been proceeding pro se, had been unable to match the facts in the record to any recognized legal theory that would entitle him to the habeas relief he was requesting, namely, release from prison. The record had been developed in a haphazard fashion, however, and factual circumstances that in some instances had only been alluded to cautioned that Petitioner may have had undeveloped and potentially meritorious claims. Accordingly, the Court found it to be in the interests of justice to appoint counsel to

Petitioner.  The Federal Public Defender's Office undertook representation of Petitioner.  Petitioner was granted leave to amend his petition, and a briefing schedule was imposed.

Petitioner, through counsel, now brings several arguments not heretofore presented to this Court.  The Government has responded to the arguments presented in the amended petition.  This matter is ripe for adjudication.

## II.  DISCUSSION

The function of the writ of habeas corpus ad subjiciendum at common law was to call upon the jailor to bring a prisoner in his charge before the court so that the jailor may justify the restraint of the prisoner's liberty.  *Peyton v. Rowe*, 391 U.S. 54, 58 (1968); *see also* Habeas Corpus Act, 1679, 31 Car. 2., c. 2, § 2 (Eng.) (codifying common law principles of habeas corpus for unlawful pretrial detentions).  As courts of limited jurisdiction, *see United States v. Hudson & Goodwin,* 11 (7 Cranch) U.S. 32, 33 – 34 (1812), district courts may entertain petitions for this venerable writ only when authorized by statute, *Carbo v. United States*, 364 U.S. 611, 614 (1961).  Among the circumstances under which courts are permitted to issue writs of habeas corpus, and the circumstance at issue in this case, is when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c).  Provided that the jurisdictional requirement is met, courts may look to the common law for the scope and application of the writ.  *Carbo*, 364 U.S. at 614 (citing *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 94 (1807)).  Following from its common law roots, habeas corpus remains, "at its core, an equitable remedy."  *Schlup v. Delo*, 513 U.S. 298, 319 (1995).  The equitable nature of habeas corpus has significant consequences for how applications for the writ are evaluated.

The writ of habeas corpus functions as an argument of last resort for prisoners contesting their detention, when no other available means of legal recourse afford a remedy. *United States ex rel. Caputo v. Sharp*, 282 F. Supp. 362, 363 (E.D. Pa. 1968); *see also* 28 U.S.C. §§ 2254(b), 2255(e). The writ's lofty purpose has been described variously as "to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints," *Fay v. Noia*, 372 U.S. 391, 401–02 (1963), and "to insure that miscarriages of justice within [the courts'] reach are surfaced and corrected," *Harris v. Nelson*, 394 U.S. 286, 291 (1969); *see also Strickland v. Washington*, 466 U.S. 668, 697 (1984) (noting that "fundamental fairness is the central concern of the writ of habeas corpus"). As the writ serves as a catchall for alleged wrongs that are incapable of redress under other provisions of the law, petitions must be reviewed by courts with "initiative and flexibility." *Harris*, 394 U.S. at 291; *see also Hensley v. Mun. Court, San Jose-Milpitas Judicial Dist.*, 411 U.S. 345, 350 (1973); *Price v. Johnston*, 334 U.S. 266, 283 (1948).

Habeas corpus proceedings are unique, being neither wholly civil nor criminal. *Harris*, 394 U.S. at 293–94. In most habeas cases, the record is developed and legal arguments are advanced by a prisoner untrained in the law and without access to the resources that may be available to a person who is not confined to a penitentiary. As a further impediment to those seeking habeas relief, many of the discovery devices provided for in the Federal Rules of Civil Procedure are not available to habeas petitioners without leave of the court. *Harris*, 394 U.S. at 295, 298; *Royal v. Taylor*, 188 F.3d 239, 249 (4th Cir. 1990). Accordingly, courts do not demand the legal precision and factual development from habeas petitioners that may be demanded of litigants of other civil actions.[4] *See*

---

[4] These principles are no less true when the petitioner is represented by counsel, especially, as is the case here, where counsel is appointed at a late stage in the proceedings.

8

*Holiday v. Johnston*, 313 U.S. 342, 350 (1941) ("A petition for habeas corpus ought not to be scrutinized with technical nicety."). Petitioners generally bear the burden of proof on their claims. *Garlotte v. Fordice*, 515 U.S. 39, 46 (1995). Consonant with the loose procedural standards, and given that the petitioner's liberty is at stake, courts are admonished to err on the side of caution when adjudicating petitions: If there is grave doubt that a petitioner's detention is lawful, then habeas relief should be granted. *See O'Neal v. McAninch*, 513 U.S. 432, 445 (1995).

In this case thus far, it has proven difficult to unequivocally assign fault to any particular actor or entity who is responsible for Petitioner's extended time in prison. Nevertheless, Petitioner's present circumstances could not have come about in the absence of a judicial mistake, clerical error, or bureaucratic blunder—or, in all likelihood, some unfortunate confluence of all three. Five potential sources of error have been identified by Petitioner with the aid of his appointed counsel. First, Petitioner argues that his right to due process was abridged because an act of the BOP negated a factual assumption of the sentencing judge which formed part of the basis of his sentence. Second, Petitioner states that he was effectively denied the right to appeal a sentence which included a significant upward departure. Third, he claims that his guilty plea to the state charges was induced by a promise which was later negated by an act of the BOP. Fourth, he avers that the BOP's decision to make Petitioner's sentences run consecutively amounted to an unconstitutional usurpation of a judicial function by an executive agency. Last, he reiterates his earlier claim that the BOP abused its discretion when it denied the nunc pro tunc request because it failed to give appropriate weight to § 3621(b)'s factors. The Court will examine these five purported errors in detail to determine if they provide grounds for further habeas relief.

A.       *Negation of Factual Basis for Sentence*

Petitioner argues that his sentence was based in part on a factual assumption that proved to be incorrect.  He contends that this was a violation of his right to due process under the Fifth Amendment.  At Petitioner's sentencing on the federal charges, Judge Sarokin made statements that suggest that Petitioner's lengthy term of imprisonment was based, at least in part, on the judge's assumptions about Petitioner's impending state sentencing.  Judge Sarokin noted on the record that Petitioner's plea agreement for the state charges included a recommendation that Petitioner's term of imprisonment should run concurrently with the federal sentence.  Judge Sarokin evidently assumed that the sentence he was about to impose would constitute Petitioner's only term of imprisonment for the series of offenses Petitioner committed in the days leading up to the bank robbery.  (Docket 2-2 ("[T]he full responsibility for this sanction and punishment appears to rest with this Court.").)  However, the sentencing range supplied by the then-mandatory Guidelines did not fully account for the totality of Petitioner's conduct.  Accordingly, Judge Sarokin outlined alternative bases for an upward departure, deciding that it would be appropriate to increase Petitioner's criminal history category by two levels.  The departure increased Petitioner's guideline sentencing range on the bank robbery count from 97 to 121 months, to 130 to 162 months.  Petitioner was sentenced in the upper-half of the adjusted range, to a sentence of 150 months.  This sentence was added to a mandatory 60-month sentence on the firearm possession count for a total sentence of 210 months.  Judge Sarokin qualified the impact of the upward departure with an apparent reference to his belief that Petitioner would not be serving additional time for the state charges:

10

> Mr. Jefferson, the Court has imposed a substantial sentence upon you in this matter, but one thing is you will be moved, I would expect in the near future, out of the local jail.  You will be put in a federal prison.

(Docket 2-2.)

Judge Sarokin's assumption, though reasonable under the circumstances, ultimately proved incorrect.  Petitioner was given a concurrent sentence on the state charges, but he was not returned to federal custody to serve the sentences concurrently.  Petitioner eventually was paroled on the state sentence and placed in federal custody.  According to Petitioner, the violation of his due process rights was completed when the BOP denied his nunc pro tunc designation request.  Had the BOP granted the request, his sentences would have run concurrently, thereby confirming the assumption that led to Petitioner's increased federal sentence.  Thus, no due process violation would have occurred.

Where a defendant is sentenced on the basis of misinformation, as Petitioner claims to have been, the usual means of redress is to collaterally attack the sentence by motion pursuant to 28 U.S.C. § 2255.  *See United States v. Tucker*, 404 U.S. 443, 445 (1972).  Such motions only may be filed in the sentencing court.  28 U.S.C. § 2255(a).  If the motion is successful, the proper remedy is for the court to vacate the sentence and conduct a new sentencing hearing.  *United States v. Looney*, 501 F.2d 1039, 1042 (4th Cir. 1974).

Petitioner brings this action under 28 U.S.C. § 2241, rather than § 2255.  A petition for habeas corpus under § 2241 is the proper means by which to attack the execution of a sentence that was otherwise lawful when it was imposed.  *In re Vial*, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997).  Unlike most cases in which a prisoner claims to have been sentenced on the basis of misinformation, Petitioner does not contend that the sentence imposed by Judge Sarokin was unlawful at the time

11

it was imposed.  He argues that his right to due process was violated when an act of the BOP negated an assumption of fact upon which Judge Sarokin relied when determining his sentence.[5]  The implication of this argument is that the BOP has a duty, mandated by due process, to execute sentences in a manner that is consistent with the intent and beliefs of the sentencing judge.  If taken at face value, this argument is appropriate for consideration under § 2241.  *See Barden v. Keohane*, 921 F.2d 476, 479 (3d Cir. 1990) (noting that "issues which affect a prisoner's term are fundamental issues of liberty that fall within our jurisdiction under 28 U.S.C. § 2241").

Petitioner's argument presents two questions which must be answered in turn.  First, could Judge Sarokin's assumption, which ultimately proved to be incorrect, be considered an error of constitutional magnitude?  To answer this question, the Court will look to the cases addressing similar factual circumstances under § 2255.  Second, if the error was constitutionally significant, did the BOP deny Petitioner due process when its exercise of its statutory nunc pro tunc designation authority had the effect of negating an assumption upon which Judge Sarokin relied at sentencing?

Federal judges have nearly unfettered discretion regarding the sources and kinds of information they may consider when sentencing defendants.  *Tucker*, 404 U.S. at 447.  Sentencing decisions may not be based, however, "upon misinformation of constitutional magnitude."  *Id.*; *see also Looney*, 501 F.2d at 1042; *United States v. Powell*, 487 F.2d 325,328 (4th Cir 1973). *Cf. United*

---

[5]  In Petitioner's words:

> The failure of the Bureau of Prisons to calculate the federal and New Jersey sentences concurrently rendered false the factual basis upon which Judge Sarokin departed above the sentence specified by the applicable Federal Sentencing Guideline and, thereby, denied the Petitioner of his due process right not to be sentenced on the basis of materially false information.

(Docket 51 at ¶ 14.)

*States v. Safirstein*, 827 F.2d 1380, 1387 (2d Cir. 1987) (extending the principle to "[u]nreasonable inferences and material assumptions").  Not every mistake of fact by the sentencing judge is of a constitutional magnitude.  *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *United States v. Malcolm*, 432 F.2d 809, 816 (2d Cir. 1979).  For a mistake to rise to the level of a due process violation, two criteria must be met: the fact or assumption must be "(1) false or unreliable and (2) demonstrably made the basis for the sentence." *Jones v. United States*, 783 F.2d 1477, 1480 (9th Cir. 1986); *accord United States v. Eakman*, 378 F.3d 294, 298 (3d Cir. 2004); *United States v. Rone*, 743 F.2d 1169, 1171 (7th Cir. 1984).

In this case, Judge Sarokin made an assumption at the sentencing hearing that turned out to be false.  Judge Sarokin stated on the record that he believed Petitioner would have been transferred from a state jail to a federal prison shortly after the sentencing hearing.  He also noted that the sentence he was about to impose likely would be the only punishment Petitioner would receive.  The Government argues that these assumptions did not form the sole basis for the upward departure.  The Government's position, even if true, is unavailing.

Judge Sarokin referred to the fact that Petitioner would not receive any additional sanction for the state charges twice during the relatively short sentencing hearing.  Judge Sarokin made no statements to the effect that the departure was not based on the prospect of a concurrent state sentence. *Cf. Jones*, 783 F.2d at 1481 (noting a presumption that a sentencing judge did not rely on a factor if it expressly disavowed reliance at the time of sentencing).  Moreover, these statements must be viewed in light of a remark by Judge Sarokin expressing that even though the sentence was lengthy, Petitioner would be transferred out of the state jail and into a federal prison to serve his sentence.  The apparent significance of this statement is that the sentence included an upward

13

departure, but that Petitioner would not be serving additional time on the state charges. Accordingly, it is reasonably certain, based on the statements made on the record at Petitioner's sentencing hearing,[6] that Judge Sarokin's assumption about Petitioner's impending state sentence was a principal reason for the decision to impose an upward departure. *See Townsend*, 334 U.S. at 740 ("We are not at liberty to assume that items given such emphasis by the sentencing court did not influence the sentence which the prisoner is now serving.").  It is immaterial that it may not have been the only reason for the departure. *See Rone*, 743 F.2d at 1171 ("A sentence must be set aside where the defendant can demonstrate that false information formed part of the basis for the sentence.").  If Judge Sarokin had known that Petitioner's state sentence would run consecutively to the federal sentence, it is doubtful that Petitioner's federal sentence would have been as long as it was.  Thus, Petitioner's federal sentence satisfies the two criteria for finding a due process violation: (1) it was based, at least in part, on a false assumption, and (2) the assumption demonstrably made the basis for the sentence.[7]

---

[6]  Unlike the current version of the Sentencing Guidelines, the guidelines in place at the time of Petitioner's sentencing did not require the sentencing court to give specific reasons in writing as to why it departed upward from the otherwise applicable criminal history category. *Compare* U.S. Sentencing Guidelines Manual § 4A1.3(c)(1) (2009), *with* U.S. Sentencing Guidelines Manual § 4A1.3 (1992).

[7]  The Supreme Court's decision in *United States v. Addonizio* arguably adds a third criterion: the mistake must relate to a fact or circumstance existing at the time of sentencing, not to an event that the sentencing judge predicts will happen in the future, 442 U.S. 178 (1979).  The present case is distinguishable.  In *Addonizio* the district erred when it granted a § 2255 motion based solely on the trial judge's recollection of his expectations at the time of sentencing.  Here, by contrast, there are "objectively ascertainable errors" in the record. *Id.* at 187; *see also Eakman*, 378 F.3d at 300–01; *United States v. De Mier*, 671 F.2d 1200, 1204–05 (8th Cir. 1982); *Iaconi v. United States*, 251 F. Supp. 2d 1015, 1042–43 (D. Mass. 2003).

Were Petitioner sentenced in this Court and this matter presented by a § 2255 motion, the above finding would entitle him to a new sentencing hearing.  But that is not the case.  To warrant relief under § 2241, Petitioner must further demonstrate that a due process violation occurred when the BOP denied his nunc pro tunc designation request.  Consequently, the Court must ascertain whether due process concerns oblige the BOP to exercise its designation authority in such a manner that none of the sentencing judge's factual assumptions are negated.

The BOP is invested with discretion to designate a prisoner to "any available penal or correctional facility that meets minimum standards of health and habitability . . . whether maintained by the Federal Government or otherwise."  18 U.S.C. § 3621(b).  The phrase "or otherwise" refers to the BOP's authority to designate federal prisoners to state prisons.  *See United States v. Evans*, 159 F.3d 908, 911–12 (4th Cir. 1998).  Although the BOP is given wide latitude to decide where to house prisoners, its discretion is not without limitation.  Section 3621(b) requires the BOP to consider five factors before designating a prisoner's place of imprisonment:

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence—

> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

> (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994 (a)(2) of title 28.

18 U.S.C. § 3621(b).  S*ee also Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 245–46 (3d Cir. 2005) (discussing the legislative history of the § 3621(b) factors).

The BOP must designate an appropriate facility at the commencement of a prisoner's federal sentence or when it transfers the prisoner.  18 U.S.C. § 3621(b).  Through caselaw ostensibly rooted in the legislative history of § 3621(b) and its predecessor statute, the BOP also has acquired the power to make a nunc pro tunc—i.e., retroactive—designation of a state facility as the official place of imprisonment for a prisoner who has served or is serving time in state custody.  *See generally Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1990); Fed. Bureau of Prisons, U.S. Dep't of Justice, Program Statement 5160.05: Designation of State Institution for Service of Federal Sentence (2003), *available at* http://www.bop.gov/policy/progstat/5160_005.pdf (PS 5160.05).  A nunc pro tunc designation permits a prisoner subject to an undischarged federal sentence to receive credit against that sentence for time served in state prison.  A nunc pro tunc designation, like any other designation, must be made in accordance with § 3621(b).  *See Trowell v. Beeler*, 135 F. App'x 590, 594 (4th Cir. 2005) (unpublished disposition); *McCarthy v. Doe*, 146 F.3d 118, 123 (2d Cir. 1998).

The practical effect of the BOP's nunc pro tunc designation authority is striking.  If the nunc pro tunc request is granted, a prisoner's state and federal sentences run concurrently.  But if the request is denied, the sentences run consecutively.  Deciding whether sentences should be concurrent or consecutive is a judicial function committed by Congress to the discretion of the courts.  *See* 18 U.S.C. § 3584.  Allowing the BOP to make this decision raises separation of powers concerns.  *Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 76 (2d Cir. 2005).  Furthermore, because nunc pro tunc requests arise in situations where a prisoner has served time in state prison for a state offense, the denial of a nunc pro tunc request may have the effect of nullifying a state court's

16

determination that a sentence it has imposed should run concurrently with a federal sentence. This situation implicates important questions of federalism and comity for which the BOP is ill-equipped to resolve.[8] *See id; accord Fegans v. United States*, 506 F.3d 1101, 1104 (8th Cir. 2007).

Nevertheless, this Court is bound by precedent. This precedent dictates that the BOP has the authority to make a nunc pro tunc designation decision notwithstanding that the decision effectively makes a prisoner's sentence concurrent or consecutive. *See Trowell*, 135 F. App'x at 595. When making this decision, the BOP must consider the factors set forth in § 3621(b). *Id.* The BOP's powers and obligations are created by statute. Section 3621(b) dictates only that the BOP "consider" any statements by the sentencing court. The BOP is not statutorily required to honor the wishes of the sentencing judge regarding whether a federal sentence is concurrent or consecutive to a state sentence which has not yet been imposed. *See Trowell*, 135 F. App'x at 595. It is not required to consider the intentions of the sentencing state court, *Barden*, 921 F.2d at 478 n.4, or consider issues of federalism or separation of powers. Lastly, and most importantly for present purposes, the BOP is not required by § 3621(b) to refrain from negating the factual assumptions of the sentencing judge.

Petitioner would have this Court add the requirement that the BOP make nunc pro tunc decisions in such a manner that they do not negate any factual assumptions of the sentencing judge. It is not within the province of this Court to add to the BOP's statutory obligations. The BOP's statutory function under § 3621(b) is to designate a prisoner to an appropriate facility. Its function

---

[8]  It must be noted that, for prisoners in Petitioner's situation, the authority to determine whether state and federal sentences will run concurrently or consecutively is not vested expressly in any judicial or executive body. This authority has fallen to the BOP by default, notwithstanding that the text of § 3621 suggests that Congress did not contemplate this result. Moreover, this Court could not locate any mention of the BOP's nun pro tunc designation authority in the legislative history of § 3621 or its predecessors. *See, e.g.,* H.R. Rep. No. 98-1030, at 141–42, *as reprinted in* 1984 U.S.C.C.A.N. 3324–25; S. Rep. No. 89-613 (1965), *as reprinted in* 1965 U.S.C.C.A.N. 3076.

is not to identify potential due process violations that may arise if the otherwise legitimate exercise of that authority negates a factual assumption of the sentencing judge.  As a practical matter, it would be onerous and impractical for the BOP to scrutinize the transcript from a prisoner's plea and sentencing hearings in an attempt to ascertain and give effect to each of the judge's factual assumptions.  More importantly, identifying and remedying constitutional violations, including the right to due process, is a traditional judicial function.  *See Crowell v. Benson*, 285 U.S. 22, 64 (1932).  If the BOP issues a nunc pro tunc decision after properly considering each relevant § 3621 factor, and the result violates due process in some respect, then the responsibility lies with the courts to remedy the situation through their power to grant habeas and other relief.  To hold otherwise would be to cede even more judicial authority to the BOP under § 3621.

Furthermore, Petitioner has cited no law, nor has this Court found any, which supports the notion that due process concerns oblige the BOP to make designation decisions in such a manner that none of the sentencing judge's factual assumptions are frustrated.  Nevertheless, it is important that the BOP endeavor to give effect to the assumptions and intentions of the sentencing court.  District judges must consider many factors when making sentencing decisions.  *See* 18 U.S.C. § 3553(a).  However, judges are well aware that some of their sentencing intentions can be expressed only as non-binding recommendations to the BOP.

One of the tools at the sentencing judge's disposal is the authority to make sentences run concurrently or consecutively.  The judge's authority to make a sentence concurrent or consecutive is not absolute, however.[9]  In situations such as Petitioner's, the sentencing court can only

---

[9]  District courts within the Fourth Circuit may not order a sentence to be served concurrently or consecutively with an impending state sentence which has not yet been imposed.  *See United States v. Smith*, 472 F.3d 222, 225 (4th Cir. 2006).  As of Petitioner's sentencing in 1992, the Third Circuit

18

recommend that the sentence be served concurrently with or consecutively to an impending state sentence.  Under these circumstances, it is imperative that the BOP give full and fair consideration to the statements of the sentencing court, in accordance with § 3621(b)(4), when it exercises its designation authority.

The Court finds that the BOP did not violate Petitioner's right to due process when it denied his nunc pro tunc designation request.  Nonetheless, for the reasons outlined above, significant due process concerns arise from the circumstances leading up to the BOP's decision and from the fact that the decision was made by the BOP applying factors intended to guide designation decisions.

B.      *Denial of Right to Appeal*

Petitioner argues that the actions of the BOP deprived him of his right to appeal a sentence which included a significant upward departure.[10]  The BOP denied Petitioner's nunc pro tunc designation request in 2003, eleven years after his federal sentence had been imposed.  The deadline for Petitioner to appeal the sentence had long since expired.  *See* Fed R. App. P. 4(b)(1).  The effect

---

had not decided the issue.  However, language in *United States v. Pungitore* suggests that the Third Circuit would not have permitted Judge Sarokin to order that Petitioner's sentence run concurrently with the impending state sentencing.  910 F.2d 1084, 1119 (3d Cir. 1990) ("[W]e recognize that the imposition of consecutive federal sentences may raise problems when the state sentences have not yet been imposed."); *see also United States v. Williams*, 216 F. App'x 201, 203  n.1 (3d Cir. 2007) (noting that the question is still unresolved in the Third Circuit).

[10]  In Petitioner's words:

> The failure of the Bureau of Prisons to calculate the federal and New Jersey sentences concurrently had the effect of depriving Petitioner of his federal statutory right to appeal a sentence which represents an upward departure from the sentencing range specified by the Federal Sentencing Guidelines in that it made factually false what would have been a valid basis for an upward departure.

(Docket 51 at ¶ 15.)

of the denial was to negate a factual assumption upon which the upward departure was based at least in part. Thus, according to Petitioner, the BOP effectively deprived him of the right to appeal an otherwise unlawful sentence because a meritorious grounds for appeal did not become evident until the BOP denied Petitioner's nunc pro tunc designation request. This argument is but a slight variation of the one discussed previously. It need not be addressed in full.

The BOP's decision to deny Petitioner's nunc pro tunc designation request could not have deprived Petitioner of his right to appeal. Pursuant to 18 U.S.C. § 3742, Petitioner had the right to seek appellate review of his sentence if he believed it to have been imposed in violation of the law. Under the version of Rule 4(b) of the Federal Rules of Appellate Procedure then in effect, Petitioner had ten days from the entry of judgment to file a notice of appeal. The BOP's nunc pro tunc designation decision, which was issued eleven years after Petitioner's right to appeal had expired, could not have deprived him of right to appeal his sentence within the ten-day deadline. Even if the BOP's future nunc pro tunc designation decision would have had some material impact on Petitioner's decision to appeal, the Court has previously found that the BOP has no obligation to exercise its designation authority under § 3621 in such a manner that none of the sentencing court's factual assumptions are negated. Moreover, Petitioner's apparent failure to appeal the sentence has not left him without a remedy to challenge the sentence, as is evidenced by this habeas proceeding.

A review of the record reveals a manner in which Petitioner's right to appeal may have been contravened, however. *Cf. Townsend v. Sain*, 372 U.S. 293, 312 (1963) (noting that "the language of Congress, the history of the writ, the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is plenary"). At the time of Petitioner's sentencing in 1992, Rule 32(a) of the Federal Rules of Criminal Procedure provided:

> Notification of Right To Appeal. – After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of the defendant's right to appeal, including any right to appeal the sentence, and of the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal in forma pauperis. There shall be no duty on the court to advise the defendant of any right of appeal after sentence is imposed following a plea of guilty or nolo contendere, except that the court shall advise the defendant of any right to appeal the sentence. If the defendant so requests, the clerk of the court shall prepare and file forthwith a notice of appeal on behalf of the defendant.[11]

The failure of a court to notify a criminal defendant of his right to appeal a sentence does not make the sentencing hearing per se constitutionally infirm. *United States v. Sabbagh*, 98 F. Supp. 2d 680, 693 (D. Md. 2000). The defendant is entitled to habeas relief, however, if he (1) had no independent knowledge of his right to appeal and (2) he was prejudiced by the failure of the court to notify him of the right. *Peguero v. United States*, 526 U.S. 23, 29–30 (1999). Similarly, habeas relief may be granted if a defendant is unaware of his right to apply for leave to appeal in forma pauperis even though he may have been aware of his right to appeal generally. *See United States v. Berry*, 4 F. App'x 159, 160 (4th Cir. 2001) (unpublished disposition).

The transcript of Petitioner's sentencing hearing does not reflect that Petitioner was notified of his right to appeal the sentence. Nor does the extensive record developed in this case contain any indication that Petitioner appealed his sentence to the Third Circuit. Petitioner has not argued that he had no independent knowledge of his right to appeal or that any lack of notice of this right prejudiced him. Thus, the record is insufficient to make a finding that Petitioner is entitled to habeas relief for this reason. Nonetheless, the Court takes notes the lack of notice to Petitioner of his right to appeal as an additional irregularity, among several, that has marked Petitioner's case.

---

[11] The current version of this rule states, in pertinent part: "After sentencing—regardless of the defendant's plea—the court must advise the defendant of any right to appeal the sentence." Fed. R. Crim. P. 32(j)(1)(B).

C.      *Inducement for State Plea Agreement*

Petitioner argues the failure of the BOP to grant his nun pro tunc designation request invalidated a promise in the plea agreement which induced his plea of guilty to the state charges. Petitioner states:

> The failure of the Bureau of Prisons to calculate the federal and New Jersey sentences concurrently caused the violation of the promise in the New Jersey plea agreement that the New Jersey sentence would run concurrently with the federal sentence and, thus, deprived the Petitioner of his federal due process right to have honored the material promises upon which he based his decision to plead guilty to the New Jersey charges.

(Docket 51 at ¶ 16.)  Petitioner's argument misses the mark, but not by much.  As will be explained below, the BOP's decision could not have affected the validity of the state plea agreement. Nonetheless, the implications of Petitioner's argument raise doubts as to whether he entered into the agreement knowingly and voluntarily and whether he received effective assistance of counsel. Furthermore, Petitioner's argument suggests perhaps the most perplexing question in this case: Why was the state sentencing court's judgment order—which imposed a sentence to run concurrently with the undischarged federal sentence in accordance with the plea agreement—not given effect by the state authorities?  From this question flows a second: Was Petitioner's right to due process of law violated as a result?

To the extent that Petitioner contends that a material promise in his state plea agreement was not honored, his argument is without merit.  For most purposes, a plea agreement can be considered a contract between a criminal defendant and the government.  *Puckett v. United States*, 129 S. Ct. 1423, 1430 (2009).  The government's promises furnish the consideration which induces the defendant to enter into the agreement.  *Id.*  If the government breaks one of its promises, the defendant is entitled to appropriate relief to remedy the breach.  *Id.*; *see also Santobello v. New York*,

22

404 U.S. 257, 263 (1971); *United States v. Dawson*, 587 F.3d 640, 645 (4th Cir. 2009); *United States v. Jureidini*, 846 F.2d 964, 965–66 (4th Cir. 1988). Where the government promises to recommend a particular sentence, it must make such a recommendation in good faith. *See United States v. Canada*, 960 F.2d 263, 269–70 (1st Cir. 1992); *see also United States v. Peglera*, 33 F.3d 412, 414 (4th Cir. 1994) ("This court has previously noted that the government's duty in carrying out its obligations under a plea agreement is no greater than that of 'fidelity to the agreement.'"). The sentencing court is not a party to the agreement. Therefore, it is not obligated to accept the recommendation. *See* Fed. R. Crim. P. 11(c)(1)(B); N.J. Ct. R. 3:9-3.

In this case, Petitioner negotiated a plea agreement with the New Jersey authorities which included a promise by the Hudson County Prosecutor to make the following sentencing recommendation: "20 years with 10 [years] parole ineligibility to run concurrent with each indictment and with federal time (210 months)." (Docket 2-1.) Presumably, the state prosecutor made the recommendation called for by the plea agreement because Petitioner's sentence on the state charges mirrored the recommendation in the plea agreement. The plea agreement, as an agreement between Petitioner and the Hudson County Prosecutor, required only that the recommendation be made. Thus, based on the evidence presently in the record, it appears that Petitioner received the benefit of the bargain in his state plea agreement.

To say that the terms of the plea agreement were satisfied does not end the inquiry, however. *See Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973). In an apparent oversight, Petitioner's argument assumes that the plea agreement was valid at the time of its formation. The record does not bear out this assumption.

A plea agreement, and the guilty plea it induces, are invalid if the defendant's actions are not knowing and voluntary. *See Parke v. Raley*, 506 U.S. 20, 28 (1992); *McCarthy v. United States*, 394 U.S. 459, 466 (1969). As with any contract, courts look to the time the plea agreement was formed to determine if the agreement was knowing and voluntary. *See Puckett v. United States*, 129 S. Ct. at 1430. The agreement will not stand unless it was "entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel." *Brady v. United States*, 397 U.S. 742, 755 (1970). Thus, when a prosecutor induces a guilty plea with a promise to recommend that a defendant's sentence be served concurrently with a sentence imposed by another sovereign, the defendant must be made fully aware of the consequences of this promise. *See Montoya v. Johnson*, 226 F.3d 399, 406 (5th Cir. 2000); *Finch v. Vaughn*, 67 F.3d 909, 916 (11th Cir. 1995); *Correale*, 479 F.2d at 948. A defendant is "entitled to presume that the state [is] bargaining in good faith and that the concurrent sentence provision [is] meaningful and would be operative." *Finch*, 67 F.3d at 915 (citations omitted). Accordingly, the defendant must be informed if some law or policy makes it unlikely or impossible that the sentence actually would be served concurrently with a sentenced imposed by another sovereign. *See id.* at 915–16; *cf. New Jersey v. Jamgochian*, 832 A.2d 360, 363 (N.J. Super Ct. App. Div. 2003) (applying New Jersey law) ("[A] guilty plea entered without sufficient understanding of the penal consequences is ordinarily invalid.").

If the defendant enters into the plea agreement in reliance on the prosecutor's misrepresentation of the consequences of the concurrency recommendation, the agreement was not entered into knowingly and voluntarily. *Id.* at 916; *Correale*, 479 F.2d at 948–49; *cf. United States v. Hammerman,* 528 F.2d 326, 330–31 (4th Cir. 1975) ("It does not matter that the [prosecutor's]

24

prediction or promise was made in good faith; what matters is it was probably relied upon, was not fulfilled and was unfulfillable."). The guilty plea therefore is unconstitutional as a violation of due process. Additionally, the failure by a defendant's counsel to recognize and explain the legal consequences of the concurrency recommendation may amount to ineffective assistance of counsel. *See Finch*, 67 F.3d at 916–17; *see also McMann v. Richardson*, 397 U.S. 759, 771 (1970) (noting that a plea is unintelligent if it is motivated by advice that does not fall "within the range of competence demanded of attorneys in criminal cases").

Petitioner has maintained throughout this case that he believed at the time he entered into the state plea agreement that his state and federal sentences would run concurrently. (*E.g.*, Docket 5 at ¶ 2.) This assertion is fully supported, albeit circumstantially, by evidence in the record.[12] The state plea agreement noted that the state court was not bound by the prosecutor's recommendation and that Petitioner could withdraw his plea if the state court imposed a more severe sentence than was recommended. But the agreement gives no indication that Petitioner's sentences could run consecutively even if the state court accepted the recommendation and imposed a concurrent sentence. Responsibility for the lack of clarity in the plea agreement rests with the prosecutor. *United States v. Harvey*, 791 F.2d 294, 300–01 (4th Cir. 1986). The statements by Judge Sarokin at Petitioner's sentencing on the federal charges, which were discussed previously, further support Petitioner's assertion. Based on the state plea agreement and representations of the parties, Judge Sarokin apparently believed that Petitioner would serve his state sentence concurrently with the federal sentence in a federal facility. Most tellingly, Petitioner did not pursue any legal remedies

---

[12] The transcripts of the state sentencing hearing potentially could resolve any doubts on this issue. The record reflects that Petitioner filed a request for the state court transcripts, but it was denied.

until he had fully served his state sentence.  If he had been aware that he was not earning credit towards his federal sentence during the twelve years he served in a New Jersey state prison, surely he would have sought legal clarification sooner.

Assuming Petitioner's misplaced faith in the concurrent sentence recommendation in his plea agreement was fostered, or at least not dispelled, by the state prosecutor and sentencing judge, his guilty plea was not knowing and voluntary.  As will be discussed in more detail below, the state prosecutor, defense counsel, and court should have known that the state court had no authority to dictate how Petitioner's undischarged federal sentence would be served.  The prosecutor's promise of a concurrent sentence therefore was hollow.  But it did not have to be.  This leads to the question posed above: Why were no actions taken to effectuate the state court's order imposing a concurrent sentence?

Even if Petitioner entered into the agreement knowingly, and the letter of the state plea agreement was satisfied, the spirit of the agreement was frustrated by subsequent failures by the New Jersey authorities.  The prosecutor's recommendation, and the sentencing judge's acceptance of that recommendation, were of little consequence to Petitioner.  For unknown reasons, no action was taken by the New Jersey authorities to ensure that the state sentence would run concurrently with the undischarged federal sentence.

The state judge's sentencing order did not create an entitlement to a concurrent sentence, *see Barden*, 921 F.2d at 478 n.4, but it afforded Petitioner a legitimate expectancy in a concurrent sentence.  This expectancy relates to the length of time Petitioner is deprived of his liberty.  Therefore, it is entitled to some measure of due process protection under the Fourteenth Amendment. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979); *Morrissey v.*

*Brewer*, 408 U.S. 471, 481 (1972).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey*, 408 U.S. at 481.  The manner of process due is a function of the nature of the right implicated and by the state action that creates the expectancy.  *See Greenholtz*, 442 U.S. at 12; *Cafeteria & Rest. Workers Union v. McElroy,* 367 U.S. 886, 895 (1961).  In this case, Petitioner's expectancy arises from the Hudson County Superior Court's sentencing order.  The minimum threshold of process due to protect that expectancy can be drawn from New Jersey caselaw.

A Supreme Court of New Jersey case argued shortly before Petitioner was sentenced and decided two months after his sentencing attests that the New Jersey judiciary and Department of Corrections (NJDOC) were keenly aware of the problems arising from overlapping sentences imposed in different jurisdictions.  The case, *Breeden v. New Jersey Department of Corrections*, highlights the problems arising from circumstances like those in the case at hand, and it describes what actions should be taken to remedy them.  625 A.2d 1125 (N.J. 1993).

In *Breeden*, a prisoner escaped from custody in New Jersey and shortly thereafter was charged with kidnaping in California.  The California court imposed a sentence to run concurrently with the prisoner's undischarged sentence in New Jersey.  California sought to extradite the prisoner to serve his sentence in New Jersey, but NJDOC refused to accept the prisoner until he had fully served the California sentence, effectively making his sentences consecutive.  The *Breeden* court held that it was inappropriate for the NJDOC to be making decisions which have the effect of rendering a prisoner's sentences concurrent or consecutive.  *Id*. at 1130.  Because such decisions are judicial, the sentencing court, not the NJDOC, must resolve these issues.  *Id*. at 1131.  In making the decision, the principles guiding the court are comity between sovereigns and equity to the defendant.

27

*Id*. Comity provides that no sovereign can dictate to another how the debt to that sovereign is to be paid, *id*., and equity prescribes that the outcome should be fair to the defendant, *id*. at 1130 (citing *Chalifoux v. Comm'r of Corr.*, 377 N.E.2d 923 (1978)). Fairness entails, among other things, that the defendant be made aware promptly of any action or decision that will make his sentences run concurrently so that he is not denied the opportunity to challenge that action or decision. *Id*.

Failures by the New Jersey authorities in the handling of Petitioner's case do not square with *Breeden* in several respects. The state authorities were aware that the federal authorities would be disinclined to give Petitioner credit against his federal sentence for time spent in a state prison. *See Breeden*, 625 A.2d at 1128–29. Thus, by committing Petitioner to a state prison, the sentencing court and NJDOC knew, or should have known, that Petitioner's state sentence likely would not run concurrently with the federal sentence. It is unclear whether the responsibility for the failure to recognize and remedy this situation lies with the sentencing court, the NJDOC, or both, but either could have taken steps to avert Petitioner's present predicament. In accordance with *Breeden*, the sentencing court had the authority to direct that the state relinquish primary jurisdiction over Petitioner so that he would be returned to federal custody. *See Stovall v. N.J. Dep't of Corr.*, Docket No. A-3535-05T5, 2007 N.J. Super. Unpub. LEXIS 1167, 2007 WL 1135669 (N.J. Super Ct. App. Div., Apr.18, 2007); *see also Trowell*, 135 F. App'x at 594. It did not. Likewise, the NJDOC could have made Petitioner available to the BOP to begin service of his federal sentence, thus giving effect to the state judge's judgment order. It also could have sought clarification from the sentencing court. It did not.

Petitioner, who is unversed in the principles of primary jurisdiction and dual sovereignty, reasonably expected the state judge's order imposing a concurrent sentence to be honored.

28

However, Petitioner was not made aware that his state sentence was effectively being made to run consecutively with his federal sentence until he was delivered to the BOP to begin service of the federal sentence.  Thus, Petitioner effectively was denied the opportunity to seek a legal remedy from the New Jersey authorities.[13]

Petitioner's expectation of a concurrent sentence created by the state judge's judgment order is entitled to some measure of due process protection.  *See Greenholtz*, 442 U.S. at 12.  Under *Breeden* and its progeny, due process would require, at a minimum, that Petitioner have been made aware of the fact that his sentences would not be served concurrently.  This due process requirement is not peculiar to sentences imposed in New Jersey.  It is axiomatic that "[a]t the conclusion of the sentencing proceeding, a defendant and the society which brought him to court must know in plain and certain terms what punishment has been exacted by the court."  *Stapleford v. Perrin*, 453 A.2d 1304, 1306 (N.H. 1982).

If Petitioner had been informed of the probable consequence of the state court's imposition of a concurrent sentence, he would have been able to seek any of several manners of redress from the state court or the NJDOC.  It stands to reason that the sentencing court would have been amenable to Petitioner's request; courts are loathe to see their orders disregarded.  Granting Petitioner the relief he likely would have requested (i.e., relinquishing New Jersey's primary jurisdiction over him) would have given effect to the state court's judgment order.  Had Petitioner

---

[13]  Potential avenues of relief that would have been available to Petitioner included petitioning the NJDOC to release him to the federal authorities, *e.g.*, *Breeden*, 625 A.2d at 1130, moving in the sentencing court to change the sequence of his sentences, *e.g.*, *Stovall*,  2007 N.J. Super. Unpub. LEXIS 1167, at *5, 2007 WL 1135669, at *2, or moving the sentencing court to remove the period of parole ineligibility, *e.g.*, *New Jersey v. Walters*, 653 A.2d 1176, 1182 (N.J. Super Ct. App. Div. 1995).

been given the opportunity to raise this issue before the state authorities, in all probability he would not be in custody today.

The Court finds that the failure of the New Jersey authorities to make Petitioner aware of the nature of his "concurrent" sentence deprived him of his right to due process.

### D.     Usurpation of Judicial Function

Petitioner argues that "[w]hen the BOP was acting on Mr. Jefferson's request for *nunc pro tunc* designation of the New Jersey prison, the BOP was really making a determination of the duration of the sentence, not where the sentence should be served." (Docket 53 at 23.)  According to Petitioner, Congress did not expressly delegate this authority to the BOP, and the BOP's actions in response to Petitioner's request for nunc pro tunc designation constitute a usurpation of judicial authority by an executive agency in violation of various constitutional principles.  Petitioner also argues that the BOP's interpretation of its statutory authority under 18 U.S.C. § 3621(b) raises serious federalism concerns.  The Court shares many of Petitioner's concerns and has noted as much previously.  *See infra* Part II.A.  The Court is mindful, however, that it should not "pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring).  The petition before the Court may be adjudicated without deciding the constitutional propriety of the BOP's actions or its interpretation of its statutory authority. Accordingly, the Court makes no findings as to the constitutional questions presented by Petitioner.

### E.     Abuse of Discretion

Petitioner contends that the BOP abused its discretion by failing to give proper consideration to each § 3621(b) factor when it denied his nunc pro tunc designation request.

In its Memorandum Opinion and Order of January 20, 2009, the Court found that the BOP's initial nunc pro tunc designation decision was the result of an abuse of its discretion in three respects. First, the BOP improperly construed a letter from the United States Probation Office for the District of New Jersey as a statement of the sentencing court. *See* 18 U.S.C. § 3621(b)(4) (obligating the BOP to consider "any statement by the court that imposed sentence"). Second, the BOP deferred its nunc pro tunc designation decision to the perceived intentions of the sentencing court as expressed by the Probation Office. *See Trowell*, 135 F. App'x at 596 (holding that it is an abuse of discretion for the BOP to "simply defer to the expressed views of the sentencing court"). Third, the BOP applied a non-existent presumption that Petitioner's federal sentence was to run consecutively to the state sentence, even though the state sentence had not yet been imposed at the time of the federal sentencing. *See United States v. Smith*, 472 F.3d 222, 226 (4th Cir. 2006) (finding no such presumption under 18 U.S.C. § 3584(a)).

The Court remanded the matter to the BOP with instructions to reconsider Petitioner's request for nunc pro tunc designation in accordance with the discretion afforded the BOP by 18 U.S.C. § 3621(b). Upon reconsideration, the BOP again denied the nunc pro tunc designation request. Neither § 3621(b) nor BOP policy, *see* PS 5160.05, require the BOP to explain the rationale for its nunc pro tunc decisions. Nonetheless, the BOP issued a written notice of decision which addressed each § 3621(b) factor. This decision is entitled to a presumption of regularity and will not be disturbed in the absence of clear evidence of error or abuse of discretion. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004).

The BOP's decision upon remand was responsive to the Court's order and reflects that the BOP considered each statutory factor. There is no evidence in the record that the BOP relied on

31

any improper or clearly erroneous factors.  Accordingly, the Court does not find that the BOP abused its discretion when it reconsidered Petitioner's nunc pro tunc designation request.

     *F.*     *Cumulative Effect of Errors, Mistakes, and Irregularities*

     The basic facts of this case are unusual and compelling.  Petitioner was sentenced in a federal court by a judge who believed that the sentence he was imposing would be served concurrently with an impending state sentence.  For this reason, the federal judge imposed a sentence that included a significant upward departure.  Shortly thereafter, a state judge imposed a sentence that was ordered to be served concurrently with the undischarged federal sentence.  Had the state authorities released Petitioner to federal custody at that time, as the federal judge had anticipated, Petitioner likely would not be in prison today.  For unknown reasons they did not, and Petitioner's term of imprisonment is set to expire no sooner than 2018.  At some point in Petitioner's lengthy period of incarceration, he has, or soon will have, exceeded the maximum term of imprisonment contemplated by both sentencing judges.  These facts leave the Court with little doubt that a miscarriage of justice has occurred.

     The dispositive issue is not whether Petitioner's continued detention is wrongful in some moral or equitable sense, however; it is whether "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241.  Petitioner's time in custody is marked by a host of errors, mistakes, and irregularities which must be considered in sum.

     The imposition and execution of Petitioner's federal sentence was problematic.  Petitioner was sentenced on the basis of misinformation of a constitutional magnitude in violation of his right

to due process.[14]  There is no telling at this late hour what sentence Petitioner would have received had the sentencing judge not considered the state plea agreement, but there is little doubt that it would have been something less than 210 months.  Furthermore, the record does not reflect that Petitioner was apprised of his right to appeal the sentence.

The BOP had the authority to render Petitioner's sentences concurrent by granting his nunc pro tunc designation request, but it has twice declined to do so.  Although the Court assumes that the BOP properly exercised its statutory authority, the fact that the decision to run Petitioner's sentences concurrently or consecutively fell to the BOP raises serious separation of powers and federalism concerns.  *See Abdul-Malik*, 403 F.3d at 76; *Fegans*, 506 F.3d at 1104.  These concerns are especially prominent where, as here, the BOP's decision is seemingly at odds with the intentions of two sentencing courts.

Mistakes that occurred in the imposition and execution of Petitioner's federal sentence balance the equities toward granting Petitioner habeas relief, but it is failures by the New Jersey authorities that give rise to the right to habeas relief.  Petitioner's state conviction and sentence did not comport with due process standards in several respects.  Petitioner's plea agreement was not entered into knowingly because it was induced by a promise of a concurrent sentence that was not fulfilled.  The agreement, and the judgment order implementing the agreement, created a legitimate expectancy of a concurrent sentence.  No actions were taken to give effect to the concurrent sentence.  Nor was Petitioner made aware that the sentence was imposed and executed in such a way

---

[14]  Because the Court has jurisdiction over this matter pursuant to § 2241 and a mandate to "to insure that miscarriages of justice within [the Court's] reach are surfaced and corrected," *Harris v. Nelson*, 394 U.S. 286, 291 (1969), it would be remiss to disregard this due process violation merely because it could have been raised by a § 2255 motion.

that consecutive sentences were all but inevitable. Due process requires, at a minimum, that Petitioner have been informed of the outer limits of his term of imprisonment so that he could have made an intelligent decision whether or not to pursue any available legal remedies from the New Jersey authorities.

Ideally, Petitioner should have sought redress from the New Jersey authorities when he was sentenced in 1993. It was due to the actions of the New Jersey authorities, however, that Petitioner was not made aware of the need to pursue legal remedies until he was transferred to the federal authorities—at which point it was too late to obtain relief from New Jersey. If Petitioner had been afforded due process, in all likelihood he would have obtained meaningful relief from New Jersey, namely, release of primary jurisdiction and delivery to federal custody.

Courts of habeas corpus have a mandate to see that all miscarriages of justice within their properly invoked jurisdiction are remedied. *Harris*, 394 U.S. at 291. This mandate clearly extends to state prisoners who demonstrate that they were denied due process in state prosecutions. *See, e.g.*, *Santobello*, 404 U.S. at 262‑63. A petitioner who has fully served his state sentence normally will have no habeas corpus remedy. *Cf.* 28 U.S.C. § 2254(a) (requiring that state prisoner be "in custody pursuant to the judgment of a State court" to be eligible for writ). The facts of this case are unusual, however. The direct and probable consequence of New Jersey's failure to afford due process to Petitioner was that the commencement of his federal sentence was delayed by more than twelve years.

Aggregating the time Petitioner served in state and federal custody, he will have served a total of twenty-seven years in prison before he is eligible for release in 2018. This eventuality was not contemplated by either of the judges who sentenced Petitioner. Furthermore, the nearly nineteen

34

years Petitioner has served thus far has satisfied the purposes for which each sentence was imposed. It makes little practical difference that the majority of the time was served in a state prison rather than a federal prison: "From the inside all jails look alike." *Breeden*, 625 A.2d at 1131 (quoting *State ex rel. Argersinger v. Hamlin*, 236 So.2d 442, 445 (Fla. 1970) (Boyd, J., concurring)).   Depriving Petitioner of his liberty in excess of his duly imposed sentences of imprisonment surely does not comport with the standards of due process mandated by Fifth and Fourteenth Amendments, no matter what bureaucratic or clerical actions have brought about the situation.

Furthermore, Petitioner's unfortunate situation was brought about by a series of relatively unremarkable mistakes and oversights.  Miscarriages of justice can come in many forms, some of which appear innocuous at first blush.  Habeas corpus is a "remedy the more necessary, because the oppression does not always arise from the ill-nature, but sometimes from the mere inattention, of government."  William Blackstone, 3 Commentaries *137.  Keeping Petitioner incarcerated for a greater period of time than the sentencing courts intended, due to what was in all likelihood an oversight on behalf the New Jersey authorities, amounts to arbitrary imprisonment.  It is not consistent with any standard of due process that society should be prepared to accept.

Accordingly, the Court **FINDS** by a preponderance of the evidence that Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c).

### III.  CONCLUSION

For the reasons set forth above, Petitioner's Amended Petition for Writ of Habeas Corpus [Docket 51] is **GRANTED**.  Respondent or his lawfully authorized designee is **DIRECTED** to release Petitioner from custody forthwith.  Petitioner is hereby reminded of his obligation to report

in person to the Probation Office within 72 hours of his release to begin service of his term of supervised release.   A separate Judgment Order will issue this day implementing the rulings contained herein.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        January 27, 2010

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

36